## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE AUTO INSURANCE          )
COMPANY,                      )
                             )
     Plaintiff,              )
                             )
vs.                           )    Case No. CIV-05-0259-F
                             )
PAUL CLIFFORD and A+          )
PRODUCTION PAINTING, INC.,    )
                             )
     Defendants.             )

## ORDER

Competing motions for summary judgment are before the court.  The first is Plaintiff's Motion for Summary Judgment filed July 15, 2005 (doc. no. 22), to which defendants responded on August 2, 2005.  The second is Defendants' Motion for Summary Judgment filed August 2, 2005 (doc. no. 30).  Defendants' motion adopts its response to plaintiff's motion as grounds for summary judgment in defendants' favor.  Plaintiff has responded to defendants' motion for summary judgment, defendants have replied to plaintiff's response, and both motions are ready for determination.

### I.  Background and Undisputed Facts

This is a declaratory judgment action brought by State Auto Insurance Company (State Auto) against Paul Clifford and Paul Clifford's company, A+ Production Painting, Inc.  In the Complaint, State Auto "requests Judgment in its favor and declaring that it has no obligation to pay UM benefits to Clifford for the motor vehicle collision" which occurred on July 21, 2004, in Norman, Oklahoma.

Although the parties' undisputed material fact statements do not set out background events regarding the collision which resulted in this coverage dispute, it

is clear from the allegations and briefing that the parties agree concerning the following.  The collision in question occurred while Paul Clifford was operating a motorcycle which he owned with his wife, Gina Clifford.  Mr. Clifford was struck by a vehicle driven by Wesley Duty.  Mr. Duty has no other relationship to Mr. Clifford or to A+.  On March 26, 2003, Mr. Clifford submitted an uninsured/underinsured motorist claim under State Auto's Business Auto Policy (BAP) number 2101641, a policy issued to A+ Production Painting, Inc. and the policy with which this lawsuit is concerned.  After denying coverage, State Auto brought this action seeking a declaration that it had no obligation to pay UM benefits to Mr. Clifford.

The parties' disagreement revolves around language found in endorsement CA9910 to the policy.[1]  It is undisputed that the endorsement reads as follows.

This Endorsement Changes the Policy.  Please read it carefully.

### DRIVE OTHER CAR COVERAGE-BROADENED COVERAGE FOR NAMED INDIVIDUALS

SCHEDULE OF INDIVIDUALS

PAUL CLIFFORD                                    GINA CLIFFORD

\* \* \*

C. CHANGES IN AUTO MEDICAL PAYMENTS AND UNINSURED AND UNDERINSURED MOTORISTS COVERAGES

---

[1]In addition to its arguments pertaining to coverage under the endorsement, State Auto argues that the policy's general language only covers certain vehicles.  If the endorsement provides coverage, however, other limitations found elsewhere in the policy are immaterial, a fact which State Auto's briefing makes clear it understands.  State Auto also cites Graham v. Travelers Insurance Co., 61 P.3d 225 (Okla. 2002), but Graham is distinguishable.  The UM endorsement in Graham did not mention coverage for the employee in question, whereas endorsement CA9910 lists Paul Clifford in the schedule of covered individuals.

The following is added to WHO IS AN INSURED:

Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member."

(Policy, P-0036, attached as an exhibit to both parties' motions.)

The gist of State Auto's argument is that there is no coverage because Mr. Clifford comes within the exception clause, that portion of the above-quoted passage which "except[s] any auto owned by that individual or by any family member." State Auto interprets this exception as applying to the vehicle which Mr. Clifford, as "that individual," was occupying at the time of the collision. Because the vehicle Mr. Clifford was occupying at the time of the collision was owned by Mr. Clifford, State Auto concludes that the exception clause applies.

Mr. Clifford and A+ interpret the endorsement differently, arguing that the exception clause applies to the vehicle which struck Mr. Clifford. Pursuant to this interpretation, the exception clause operates if the vehicle which struck Mr. Clifford was owned by Mr. Clifford as "that individual," (or by Gina Clifford, or by one of the Clifford's family members). Because Mr. Duty, an unrelated driver, collided with Mr. Clifford, Mr. Clifford argues that the exception does not apply, leaving him with UM coverage as a scheduled individual under the endorsement.

As will be seen, this case aptly illustrates the fact that drafters of insurance policies, even while attempting to avoid legalese by using simple English, are fully capable of writing nearly impenetrable policy language.

## II.  Discussion

### A.  Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

### B. Rules of Construction

Oklahoma law governing insurance coverage disputes is well established.  As stated in Cranfill v. Aetna Life Insurance Company, 49 P.3d 703 (Okla. 2002):

> The foremost principle is that an insurance policy is a contract. Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract.  It necessarily follows that courts are not at liberty to rewrite the terms of an insurance contract. When addressing a dispute concerning the language of an insurance policy our first step is to determine as a matter of law whether the policy language at issue is ambiguous.  If it is not ambiguous, we accept the language in its plain, ordinary and popular sense.  If the language is ambiguous, we apply well-settled rules of construction to determine the

> meaning of the ambiguous language: we construe the policy to give a reasonable effect to all of its provisions, and we liberally construe words of inclusion in favor of the insured and strictly construe words of exclusion against the insurer.

*Id.* 49 P.3d at 706 (citations omitted).  The test to be applied in determining whether a word is ambiguous is whether the word is susceptible to two interpretations on its face.  *Id.*  (citation omitted).

As the quoted language from Cranfill provides, once an ambiguity has been discerned, the court must then determine the reasonable expectations of the insured. As stated in Spears v. Shelter Mutual Insurance Company, 73 P.3d 865 (Okla. 2003):

> Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. [Citation omitted.] Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the objectively reasonable expectations of the insured to fashion a remedy.

*Id.* at 868.  Spears also reiterates that if an insurer desires to limit its liability, it must do so with language that clearly and distinctly reveals its stated purpose.  *Id.*  Unclear or obscure clauses in an insurance policy will not be permitted to defeat coverage which is objectively reasonably expected by a person in the position of the insured. *Id.*

### C.  Ambiguity

Pursuant to these rules of construction, the first issue to be determined by the court[2] is whether the policy is ambiguous.

---

[2]Although certain fact issues (regarding the parties' conduct or statements) or legal issues (concerning the weight to be given to statements contained in attorney opinion letters regarding the policy) are addressed in the parties' briefing, these issues are not material because the court's adjudication is based entirely upon the undisputed wording of the policy.

Deleting spacing and quotations, the pertinent part of the endorsement reads as follows.

Any individual named in the Schedule and his or her family members are insured while occupying or while a pedestrian when being struck by any auto you don't own except:  Any auto owned by that individual or by any family member.

This "sentence" defies diagraming. For one thing, it leaves the phrase "while occupying" dangling without any explanation of what is being occupied.  Although the phrase "while occupying" presumably refers to while occupying a vehicle of some sort, this phrase's lack of an object leaves the reader struggling to understand which phrases modify which objects in the passage as a whole.  The absence of  commas makes it even more difficult to understand where phrases stop and start and to what they pertain.   This general lack of clarity results in at least two plausible interpretations concerning to which vehicle the exception clause pertains.

Additionally, the meanings of "that individual" and of "any family member" are unclear.  "That individual" may refer to:  1) the individual occupying the vehicle which is struck; 2)  the previously referenced "you" (creating other problems); or 3) the individual who owns the car which struck the car the insured was occupying.  The endorsement does not clarify that "any family member" refers to family members of "that individual," thus, at least theoretically, "family member" could refer to anyone in the world because everyone  is a member of some family.  That result is absurd, of course, but it is mentioned to illustrate the passage's overall lack of clarity. Presuming that "any family member" refers to any family member of the previously referenced "that individual," the presumption solves nothing, because the identity of "that individual" is not clear.

Complicating things even more, there are valid questions regarding the meaning of "you" as used in this endorsement.  State Auto correctly points out that  "you" is a term which is defined elsewhere in the policy to mean the "named insured shown in the declarations" and that "A+ Production" is the only party listed as a "named insured" on declarations page.  (Policy, P-0035.)  This observation is not dispositive here, however, where the endorsement's general lack of clarity suggests good reasons to question whether "you" denotes only A+.  Even a reader attempting to scrupulously apply only the defined meaning of "you" as stated in the declarations page is left wondering whether Paul and Gina Clifford are "named insureds" for purposes of this particular endorsement, based on other language in the endorsement and the declarations page.  (See part D, below.) [3]

For all of these reasons, the court finds that the policy is ambiguous because the endorsement is susceptible to at least two plausible meanings.

### D.  Objectively Reasonable Expectations of the Insured

Having found ambiguity, the next question is whether Mr. Clifford's proposed interpretation of the policy's UM coverage and his expectation of coverage is reasonably objective.  Several considerations support the conclusion that it is.  First, State Auto's interpretation of the endorsement requires more linguistic gymnastics than does Mr. Clifford's interpretation.   Second, the endorsement is entitled "BROADENED COVERAGE FOR *NAMED* INDIVIDUALS" (emphasis added) and it specifically names Paul Clifford and Gina Clifford as the two individuals covered by the endorsement.  The endorsement states that it covers "[a]ny individual *named*

---

[3]Even if "you" is taken to mean only A+, that does not foreclose Mr. Clifford's interpretation of the endorsement.  With "you" as A+, Mr. Clifford would read the endorsement as providing coverage while Mr. Clifford is occupying a vehicle and when being struck by any auto which A+ does not own, so long as the auto striking Mr. Clifford is not owned by Mr. Clifford himself (or by any of his family members).

in the [s]chedule...." (emphasis added).    The declarations page (P-0035), which defines A+ as the "named insured," states that "these declarations *with* policy provisions and *endorsements*...complete the policy."   (Emphasis added.)   Thus, reading the endorsement's title, the endorsement language, and the declarations page together, it is reasonable to conclude that "*named* individuals" Paul and Gina Clifford are "*named* insureds" for purposes of the UM endorsement.   Third, Mr. Clifford's proposed interpretation of the endorsement as covering him so long as the car which struck him is not owned by him (or by his wife or by one of their family members) is an interpretation which makes sense.   Fourth, Mr. Clifford's interpretation of the exception clause is one which the legal rules of insurance policy construction support. Those rules provide that ambiguous words of exclusion, such as the exception clause portion of this endorsement, should be construed against the insurer.   *See*, *e.g.*, Cranfill, 49 P.3d at 706.  The fact that legal and policy considerations support Mr. Clifford's interpretation of the policy is evidence of the objective reasonableness of Mr. Clifford's expectation of coverage.

## III.  Conclusion

After careful consideration of the parties' submissions, the record, and the relevant authorities, the court determines that the policy is ambiguous and that the defendants' interpretation of the policy is objectively reasonable. These determinations make it unnecessary to consider any of the parties' other arguments. Accordingly, for the reasons stated in this Order, Plaintiff State Auto Insurance Company's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**.  As the relief sought in this action is a judgment in State Auto's favor declaring that State Auto has no obligation to pay UM benefits to defendants for the motor vehicle collision in question, and as this Order answers that request by denying same, this Order disposes of all claims alleged in this action.

"Plaintiff's Daubert Motion to Exclude Testimony and Report of Defendants' Expert Marcia Haag," filed July 25, 2005 (doc. no. 28) is **STRICKEN** as moot.

Dated this 12th day of September, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0259p007(pub).wpd